**GOYA DE PUERTO RICO, INC., Plaintiff,**

v.

**Alexis M. HERMAN, Secretary of the U.S. Department of Labor, Defendant.**

**No. CIV. 99–1111(SEC).**

United States District Court, D. Puerto Rico.

Sept. 29, 2000.

Angel Muñoz–Noya and Nelson Robles–Diaz, on brief for Goya; Lespier & Muñoz–Noya, San Juan, PR, for Plaintiffs.

---

Marybeth Martin, on brief for defendant; U.S. Dept. of Justice, Civil Rights Division, Employment Litigation Section, Washington, D.C., for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending disposition before the Court is the Defendant's Motion to Dismiss, (Docket # 6), the Opposition filed by the Plaintiff, (Docket # 9), and the Defendant's Reply, (Docket # 12). For the reasons stated below, Defendant's motion to dismiss, (Docket # 6), is **GRANTED** and judgment shall be entered accordingly.

## I. Factual and Procedural Background

On February 2nd, 1999 Goya de Puerto Rico, Inc., (hereinafter "Goya"), filed a complaint in the case at bar against the Secretary of the U.S. Department of Labor, ("the Secretary"), for declaratory judgment, temporary restraining order, preliminary and permanent injunctive relief, and damages; seeking to enjoin the Secretary from enforcing Executive Order 11246, 20 Fed.Reg. 122319, *as amended* by Executive Order Nos. 11375 and 12086; 32 Fed.Reg. 14303 and 43 Fed.Reg. 46501 respectively; ("the Executive Order"), on grounds that the Executive Order is unconstitutional and void. (Docket # 1 ¶¶ 1.1–1.2). Plaintiff alleged that the Executive Order was issued ultra vires and that as implemented, it violates Goya's Equal Protection and Due Process rights under the Fifth Amendment to the U.S. Constitution. (Docket # 1 ¶ 1.2). In addition, Goya seeks a declaratory judgment that the Secretary of Labor's enforcement of the contractual obligations imposed by § 503 of the Rehabilitation Act of 1973, *as amended,* 29 U.S.C. § 793, (hereinafter "Rehabilitation Act"); the Vietnam Era Veterans Readjustment Assistance Act of 1974, *as amended,* 38 U.S.C. § 4212, ("Veterans Act"); and the enforcement procedures established for each of these statutes, have been superseded by the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* An injunction was sought to halt the enforcement of these procedures. (Docket # 1 ¶ 1.3).

The facts that give rise to this case, according to Plaintiff's pleadings, go back to June 6, 1996, when the Department of Labor notified Goya that it was selected for compliance review under Executive Order 11246, the Vietnam Act, and the Rehabilitation Act. (Docket # 1 ¶ 4.1). After an exchange of letters between Goya and the Secretary, on August 2nd, 1996 Goya sought an exemption from the applicability and enforcement of the affirmative action plans. (Docket # 1 ¶ 4.2). Goya's request for an exemption was apparently taken under advisement by the administrative agency, but after several efforts by Goya to obtain an answer to its request, the same went unanswered. (Docket # 1 ¶¶ 4.2–4.6).

On May 1st, 1998, the Director of the Office of Federal Contract Compliance Programs from the Department of Labor, ("OFCCP"), initiated administrative proceedings against Plaintiff pursuant to § 503 of the Rehabilitation Act, the Veterans Act, and the Executive Order. The administrative complaint alleged that Goya is a government contractor and the beneficiary of a blanket purchase agreement issued by the Defense Commissary Agency of the Department of Defense, contract number DECA0292A6417. The Executive Order, applicable to every federal contractor, mandates that they develop an affirmative action compliance plan, ("AACP"), similar to those required by Title VII for race, color, religion, sex, and national origin. The Rehabilitation Act and the Veteran's Act required Goya to develop a written affirmative action compliance program concerning disability, disabled veterans, and veterans of the Vietnam War for each of its establishments. (Docket # 1 ¶ 4.8).

The OFCCP sought administrative sanctions against Goya that include: "(a) the withholding of all pending progress payments due on Goya's contracts with the federal government; (b) the immediate

termination of all of Goya's existing contracts with the federal government; and (c) the declaration of Goya's ineligibility for any extension, modification or award of existing or future contract with the federal government, until such time as Goya can satisfy the OFCCP that it has developed a written affirmative action program in compliance with the relevant regulations." (Docket # 1 ¶ 4.9).

A hearing was scheduled on the administrative complaint, to decide whether or not Goya had committed the violations alleged by the OFCCP. Prior to the hearing Goya sought partial dismissal of the complaint and that the hearing be changed to a pre-hearing in order to discuss several constitutional issues which are now raised by the instant civil suit. (Docket # 1 ¶ 4.11). The OFCCP allegedly objected Goya's motion to change the hearing to a pre-hearing conference on grounds that "the administrative law judge lack[ed] jurisdiction to decide the constitutionality of Executive Order 11246." (Docket # 1 ¶ 4.12). The administrative law judge, ("ALJ"), then held a conference call with counsel for both parties and denied both of Goya's motions. (Docket # 1 ¶ 4.13). In addition, the administrative law judge ruled that he would not entertain or decide any constitutional issues raised in relation to the administrative complaint before him. (Docket # 1 ¶ 4.14).

Plaintiff argues that the above-chronicled actions by the OFCCP and the ALJ were taken pursuant to an Executive Order that is unconstitutional in so much as it constitutes an exercise of legislative power by the executive branch. In addition, Plaintiff contends that the Executive Order violates the Equal Protection Clause of the Fifth Amendment to the Constitution because it contains suspect classifications such as race and sex, which constitute reverse discrimination in the absence of a prior finding of discriminatory wrongdoing. (Docket # 1 ¶¶ 5.4–5.5).

Plaintiff's motion for a temporary restraining order was denied by the Court on February 2nd, 2000. (Docket # 2 Mar-gin Order; Docket # 3 Opinion and Order). On April 22nd, 1999 the Secretary filed his motion to dismiss. (Docket # 6). Through said motion, the Secretary argued that the complaint should be dismissed on grounds that the Plaintiff failed to exhaust its administrative remedies and that Plaintiff's claims are not ripe for judicial review. (Docket # 6, p.1).

Goya filed an opposition on June 1st, 1999 whereby it alleged that the doctrine requiring the exhaustion of administrative remedies is not applicable to this case because the controversy in this case revolves around issues of constitutional law which the ALJ is not empowered to rule upon. (Docket # 9 at p. 4).

## II. Analysis of Applicable Law

### A. Motion to Dismiss Standard

Dismissal for failure to state a claim is appropriate when the trial court, after accepting as true the well-pleaded factual allegations of the complaint, and drawing all reasonable inferences therefrom in the plaintiff's favor, finds that the complaint, so read, does not limn facts sufficient to justify recovery on any cognizable theory. *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

While in ruling upon a motion to dismiss the court must ordinarily ignore matters outside the pleadings, *see, e.g., Maldonado*

*v. Dominguez,* 137 F.3d 1, 6 (1st Cir.1998) (in order to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, district court must ignore matters outside the pleadings); *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997) (same); *Vega–Rodriguez v. Puerto Rico Telephone Co.,* 110 F.3d 174, 177 (1st Cir. 1997) (same), the court may consider any documents which are referred to in the nonmovant's pleadings and which are central to his or her claim. *Cf. Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998).

## B. Exhaustion of Administrative Remedies

The Supreme Court has held that parties must exhaust administrative remedies before filing a claim for relief in federal court. *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). This is so because exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* at 146, 112 S.Ct. 1081. Of paramount importance to the application of the doctrine is congressional intent. *Id.* at 145, 112 S.Ct. 1081. Consequently, courts have differentiated between permissive and mandatory administrative remedies, stating that "[w]hen Congress explicitly requires that administrative remedies must be pursued before seeking judicial relief, litigants must obviously follow that mandate" but "where Congress has not clearly required exhaustion, sound judicial discretion governs." *Trafalgar Capital Associates, Inc. v. Cuomo,* 159 F.3d 21, 36 (1st Cir.1998) (internal quotations omitted); *McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081. However, in guiding their discretion, courts must give the "appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard." *McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081. Therefore, exhaustion principles must be fashioned "in a manner consistent with congressional intent and any applicable statutory scheme." *Id.*

In practice however, "the doctrine has softer edges than this language implies." *Portela–Gonzalez v. Secretary of the Navy,* 109 F.3d 74, 77 (1st Cir.1997). The Supreme Court has recognized that "[the] federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan,* 503 U.S. at 147, 112 S.Ct. 1081. This balancing of interests has produced at least three broad categories of recognized exceptions to the applicability of the doctrine. *Id.* at 147, 112 S.Ct. 1081. These are: (1) When "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action" such as for example, the unreasonable or indefinite time frame established for an administrative action. *Id.* at 147–148, 112 S.Ct. 1081; (2) When there is doubt as to whether or not the agency is empowered to grant effective relief, such as the instance where the administrative agency lacks competence to resolve a challenge to the constitutionality of a statute; *Id.* at 148, 112 S.Ct. 1081; (3) When the administrative remedy may be inadequate based on the bias or predetermination evidenced by the administrative body; *Id.* at 149, 112 S.Ct. 1081. In general, the doctrine should be upheld where "the various interests served pull in the direction of exhaustion." *Com. of Mass. v. Lyng,* 893 F.2d 424, 427 (1st Cir.1990). However, when "they pull in different directions, analysis of the particular case at hand is required." *Id.*

In this particular case, the parties concede that the application of the doctrine of exhaustion is not mandated by law, therefore the Court will endeavor to examine the allegations of the complaint against the backdrop of the case law cited above, in order to determine whether or not the doctrine should be applied to bar this action. In particular, the Department of Labor argues that Plaintiff "may not seek a federal court determination as to the constitutionality and applicability of the

Executive Order, the Rehabilitation Act, and [the Veterans Act] until the administrative process fully has run its course and the Department of Labor has issued a final Administrative Order on the threshold issue [of] whether the Executive Order even applies to the Plaintiff." (Docket # 6 at p. 9). The Secretary affirms that Goya "cannot demonstrate that it has suffered any cognizable harm at this time." (Docket # 6 at p. 10). His theory is that in order for the harm to materialize, the proceedings before the ALJ must conclude, the ALJ must issue a recommendation, and the Administrative Review Board, ("ARB"), must issue a final administrative order against the Plaintiff. Accordingly, it is speculative at this time to determine whether or not the above-cited statutes and regulations, as applied to the Plaintiff, are unconstitutional.

In addition, the Secretary argues that Plaintiff is not deprived of a remedy in spite of the fact that the Department of Labor is not empowered to consider Goya's constitutional challenges, because "the OFCCP enforcement scheme provides several opportunities for the Department of Labor to consider the coverage arguments Plaintiff has raised in the administrative proceeding." (Docket # 6 at p. 12). Moreover, even if the Plaintiff does not prevail before the ALJ, "it may [yet] persuade the ARB to adopt a finding in favor of any of [its] affirmative defenses, such as that it is not a covered contractor because it did not sign the blanket purchase agreement, or that it is not required to develop an Affirmative Action Plan, ("AAP"), because it operates in a minority jurisdiction." (Docket # 6 at p. 13). The adoption of any of these defenses by the administrative agencies concerned will render the instant complaint, along with the constitutional challenges it asserts, moot. Therefore, the Secretary concludes that judicial and administrative efficiency mandate judicial restraint in this case.

On the other hand, Goya argues that it is exempted from the application of the exhaustion doctrine because "the controversy presented is of such a purely legal and extra statutory nature" that the preparation and completion of an administrative record is of no consequence to the outcome of the case. (Docket # 10 at pp. 13–14). In addition, Goya asserts that the agency lacks power to grant effective relief. This argument is founded on the lack of power by the competent administrative bodies to consider the constitutional issues challenging the authority of the Secretary to enforce the Executive Order. (Docket # 10 at p. 22). Goya argues that "[b]ecause the agency and the ALJ are not empowered to hear constitutional challenges to their authority to enforce the Executive Order, there is no warranted reason to invoke the exercise of the agency's discretionary power, the opportunity for the agency to correct its own errors, or the application of its special expertise." (Docket # 10 at pp. 22–23). In addition, Goya indicates that the nature of its constitutional challenge requires only that "the district court square the text of the [Executive] Order with that of the Constitution." (Docket # 10 at p. 23).

In a reply memorandum filed by the Defendant on July 7, 1999, (Docket # 12), the Secretary informed the Court that as early as June 22nd, 1999 the ALJ had issued a Recommended Decision and Order, ("RD & O"), which was adverse to Goya. However, the RD & O was not final, since the final authority to issue an Order in that regard remained with the ARB. At the time the Defendant filed his brief the ARB had not yet issued a final order. Already a year has gone by. As far as the Court is concerned Goya's claims may be moot. However, for purposes of this Order the Court will assume that the administrative proceedings are still pending and that Goya remains exposed to the potential sanctions referenced above.

■ A review of Goya's complaint reveals that Goya's claims constitute a facial challenge to the constitutionality of the Executive Order and the legality of the proceedings followed by the Department of

Labor to enforce said Executive Order, the Veterans Act and the Rehabilitation Act. It is admitted that the Department of Labor lacks the authority to review the substance of Plaintiff's constitutional attack on Executive Order No. 11246 on grounds of separation of powers. However, the Department of Labor is empowered to review the legality of its own procedures. In this sense, Plaintiff's complaint for declaratory judgment regarding the applicability of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.*, **needs** to be raised at the administrative level before it can reach judicial review. *See Accion Social de Puerto Rico v. Viera Perez*, 831 F.2d 365, 371 (1st Cir.1987) (For the proposition that there is a general rule to the effect that "an agency should be permitted the opportunity to interpret its authorizing statute" and the governing statutory provisions in cases before it. These issues are of the particular competency of the administrative agency.); *Uniroyal, Inc. v. Marshall*, 579 F.2d 1060, 1065 (7th Cir.1978), *citing Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) ("Federal courts should accord great deference to an agency's construction of its authorizing statute.")

Plaintiff argues that its constitutional claims must be treated differently. Defendant's position is that they need not. To that effect the Secretary cites the case of *NationsBank Corp. v. Herman*, 174 F.3d 424 (4th Cir.1999). In *NationsBank*, the Fourth Circuit was confronted with a constitutional challenge to the OFCCP's selection of some of Nationsbank's offices for affirmative action compliance review. The Secretary moved for dismissal of the complaint on grounds that Nationsbank failed to exhaust administrative remedies before resorting to the federal courts, with the result that the Fourth Circuit found that exhaustion was required. *Id.* at 430. The Court of Appeals first noted that Executive Order 11246 (the same at issue here) clearly requires exhaustion of administrative remedies because "Congress by granting the President authority to issue 'policies and directives' to carry

out implementation of Executive Order 11246 by the agencies, did speak 'clearly' in requiring exhaustion." *Id.* at 428. The Circuit Court then continued: "Nationsbank's... argument fails under our consistent and unambiguous line of cases rejecting the contention that constitutional claims should be exempt from exhaustion requirements." *Id.* at 429.

Other cases have equally held that exhaustion is required even when there are constitutional challenges to the regulation being enforced. *See Volvo GM Heavy Truck Corp. v. U.S. Department of Labor*, 118 F.3d 205, 215 (4th Cir.1997) ("[E]xhaustion can be useful even where a constitutional issue is presented... [T]he prudential considerations underlying the exhaustion doctrine are no less weighty when an administrative litigant raises a constitutional challenge to a statute which an agency is charged with enforcing.") (Citations and internal quotations omitted); *Andrade v. Lauer*, 729 F.2d 1475 (D.C.Cir.1984) ("In general, the fact that appellants raise both constitutional and nonconstitutional claims does not in itself affect the application of the exhaustion doctrine.") (Citations omitted); *Colon Collazo v. Cordero Santiago*, 698 F.Supp. 30 (D.P.R.1988) ("Merely raising a constitutional issue in its complaint for declaratory judgment, when full appellate review of the administrative proceedings is available and in the absence of any extenuating circumstances, is insufficient to give the district court jurisdiction over the subject matter in the face of the well established doctrine of exhaustion of administrative remedies.").

Accordingly, the Court will determine from the particulars of this case, whether or not the purposes of exhaustion are well served, or the individual interests of the Plaintiff should prevail. First, the Court notes that the administrative proceedings are in a relatively advanced stage. Second, the Plaintiff remains potentially exposed to administrative sanctions, but it has not suffered a material and substantial damage yet. *Nationsbank Corp.*, 174 F.3d

at 429 (Finding that the bureaucratic burden imposed on a party from having to exhaust administrative remedies before suing does not justify a waiver when a constitutional claim is at issue.); *Volvo GM Heavy Truck Corp.*, 118 F.3d at 213 (The burden of having to defend itself in an administrative proceeding is not a harm that warrants a waiver of the exhaustion doctrine.) Third, the fact that the damages have not materialized makes judicial intervention premature at this stage. The case of *Andrade v. Lauer*, 729 F.2d 1475 (D.C.Cir.1984) cited by the Plaintiff did waive exhaustion in the particular instance of constitutional challenges to a reduction in force carried out by the Department of Justice, where seven employees had already suffered the damages of being dismissed or demoted as a consequence of the reduction in force. In that particular case, the court noted that the administrative procedures presented "a number of hurdles" that made them "extremely burdensome and likely to delay judicial resolution for an extremely long time." *Id.* at 1493. That, coupled with the fact that the employees claims were mature and that their constitutional claims were completely divorced from the statutory claims, convinced the court that a waiver of exhaustion was proper. *Id.*

In this difficult case however, we find that *Andrade* is distinguishable. First, in this case the administrative proceedings are currently at a relatively advanced stage. Second, Goya's exposure to potential sanctions have yet to materialize in an actual administrative order issued against it. Third, Goya has raised defenses before the administrative agency that potentially could render the constitutional issue moot. Fourth, Goya is not deprived of a remedy because judicial review remains available after the Department of Labor issues a final order. Finally, the Court notes that the holding in *Andrade, supra*, has been undermined by the later D.C. Circuit case of *Ticor Title Ins. Co. v. F.T.C.*, 814 F.2d 731 (D.C.Cir.1987). In *Ticor, supra*, the plaintiffs "brought a facial constitutional challenge under the general federal question statute . . . to the authority of the FTC to initiate and prosecute a complaint against them." *Id.* at 732. In addition however, they maintained several nonconstitutional defenses to the FTC complaint at the administrative level, which at the time of filing in the federal court, were still pending resolution. *Id.* The issue as phrased by the court was the following: "[W]hether the appellants must exhaust their nonconstitutional defenses in the ongoing administrative proceeding before bringing their constitutional challenge to the agency's authority in federal court." *Id.* The district court found that they did and that determination was affirmed by the D.C. Circuit. In writing the Opinion, Circuit Judge Harry T. Edwards expressed the following:

[T]he advantages of adherence to the exhaustion doctrine in this context will ordinarily outweigh the interests of plaintiffs in obtaining immediate judicial review. First the plaintiffs may prevail before the agency on independent grounds, thereby mooting the plaintiffs' challenge and rendering it unnecessary for the court to intervene. Such a result would conserve judicial resources for those cases in which judicial involvement is absolutely necessary for resolution of the controversy. This interest in avoiding premature judicial involvement is heightened where the plaintiffs raise a constitutional challenge to agency action. [Particularly where] the Supreme Court has admonished courts not to decide important constitutional questions, and possibly invalidate congressional legislation, where a controversy may be resolved on some independent, nonconstitutional ground . . .

Second, I think it unwise to embrace an exception to the exhaustion doctrine that would permit interruption of ongoing agency proceedings whenever a litigant raises a non-frivolous challenge to the legitimacy of those proceedings. Such an exception would encourage litigants to by pass the orderly processes of administrative agencies and would intolerably interfere with the ability of

those agencies to perform the tasks assigned to them by Congress. The principal countervailing interest in favor of immediate judicial review is the litigant's interest in not being forced to defend itself in an allegedly unauthorized proceeding. That interest, however, is far less weighty than the court's interest in conserving its judicial resources and discouraging the flouting of administrative procedures. The litigant, of course retains its right to challenge the final agency determination on the ground that the agency acted outside its statutory authority or in violation of the Constitution.

*Id.* at 741–742. We find the Court's holding in *Ticor, supra,* controlling here. Accordingly, Defendant's motion to dismiss the above-referenced complaint, (Docket # 6), is **GRANTED**.

**SO ORDERED.**